IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RACHEL YERIAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CENTER FOR DISABILITY RIGHTS, INC., ) <br> ) <br> Defendant. ) <br> _____ ) | CIVIL ACTION NO. 6:18-cv-6147 <br><br> <u>COMPLA I NT</u> <br><br> <u>JURY TRIAL DEMAND</u> |

## **NATURE OF THE ACTION**

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") and Title VII of the Civil Rights Act of 1964 to correct unlawful employment practices on the basis of disability as well as unlawful retaliation, and to provide appropriate relief to an employee who was adversely affected by such practices. As alleged with greater particularity below, Plaintiff alleges that Defendant, Center for Disability Rights, Inc., (hereinafter referred to as "CDR" or "Defendant" or "Employer") discriminated against Plaintiff Rachel Yerian (hereinafter also referred to as "Plaintiff") on the basis of her disability, by failing to accommodate her after she made a reasonable request for accommodation of Defendant CDR, and that Defendant retaliated against Plaintiff for seeking said accommodations by disciplining her unfairly, and then terminating her employment. Defendant discriminated on the basis of disability against Plaintiff, who is deaf, and who suffered from a qualified disability for which she was prescribed medication. She is a qualified individual with a disability. Defendant failed to engage in the required interactive process regarding her disability and regarding accommodations she sought,

1

and failed to accommodate her reasonable requests for accommodation, and instead retaliatorily subjected her to adverse consequences in employment as a direct and proximate result of her having sought the accommodation by disciplining her and ultimately, terminating her employment. On behalf of Plaintiff, for her complaint against Defendant CDR, states as follows:

**Jurisdiction and Venue**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3).

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of New York, Rochester Division.

3. Venue of this action in the United States District Court for the Western District of New York is proper pursuant to 28 U.S.C. § 1391(b) because the Plaintiff was employed and subjected to employment discrimination in the Western District, and a substantial part of the events giving rise to these claims, occurred here.

4. All conditions precedent to the filing of this lawsuit have been met. Plaintiff timely dual-filed a charge of disability discrimination with the New York State Division of Human Rights ("NYSDHR") and the United States Equal Employment Opportunity Commission ("EEOC") prior to filing the instant action.

5. Plaintiff received a "Probable Cause Determination" from the NYSDHR. (Determination Attached as Exhibit "**A**").

6. Plaintiff files the instant Complaint within 90 days from her receipt of the "Right To Sue Letter" she received from the EEOC. (Right To Sue Letter Attached as Exhibit "**B**").

## PARTIES

7. Plaintiff, Rachel Yerian, an individual with a qualified disability within the meaning of the ADA, is a resident of Rochester, New York, Monroe County, and was, at relevant times hereto, an employee of Defendant, Center for Disability Rights, Inc., where she was employed by Defendant from January of 2016 to February of 2017 as a "Deaf Communications Specialist" ("DCS").

8. Defendant, Center for Disability Rights, Inc. is a Domestic Not-For-Profit Rochester-based Corporation and authorized to conduct business in New York State where it employed Plaintiff at relevant times hereto. Defendant is a community-based advocacy and service organization for people with all types of disabilities and employs more than 15 individuals at any given time.

9. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h), in Monroe County in the State of New York where it employed and fired Plaintiff at relevant times hereto and where it conducts its affairs in New York State, and within the jurisdiction of the Federal Court, Western District, New York and where it has continuously had at least 15 employees. At relevant times hereto, Defendant employed Plaintiff in Rochester, New York, Monroe County.

## **STATEMENT OF CLAIMS**

10. More than thirty days prior to the institution of this lawsuit, on 02/16/2017, Plaintiff, Rachel Yerian, dual-filed a charge with the New York State Division of Human Rights ("NYSDHR") and the United States Equal Employment Opportunity Commission ("EEOC") alleging violations of the ADA and State Executive Laws, including retaliation against Defendant Employer.

11. After investigation, the NYSDHR determined that PROBABLE CAUSE existed to believe that Defendant had engaged in unlawful discriminatory practices she complained of. (See Determination, Attached as **Exhibit "A"** hereto).

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

13. Plaintiff Rachel Yerian was employed by CDR from January of 2016 to February of 2017 as a DCS.

14. At all times relevant hereto, Plaintiff was amply qualified to hold the position of DCS, and satisfactorily performed her duties while employed at CDR, and would have been able to perform all of the essential functions of her position as a DCS with accommodations.

15. In July of 2016, Plaintiff asked her supervisor, Catherine Stutzman for a reasonable accommodation in the form of an adjustment to her work schedule so that she could work the morning/day shift instead of the overnight shift.

16. Plaintiff made the foregoing request for a shift change after Plaintiff's physician determined that such a shift change would allow the medication he had prescribed to her to function better.

17. Without engaging in any interactive process with Plaintiff whatsoever, Defendant simply refused to grant the accommodation at that time.

18. On September 26, 2016, Plaintiff brought a medical note to work and attached it to an e-mail she sent to Catherine Stutzman the same date, in which she re-requested the same accommodation of a shift change.

19. Defendant, by and through Ms. Stutzman, refused to discuss Plaintiff's accommodations, or the underlying disability until the two met in person at a previously-scheduled meeting on October 3, 2016 which was convened to discuss Plaintiff's job performance.

20. At this meeting, it was agreed that her Friday and Saturday shifts would be changed to 7:30 AM – 3: 30 PM. Otherwise, Plaintiff's schedule remained unchanged.

21. Plaintiff's schedule prior to the October 3rd meeting was: Tuesday, Wednesday, and Friday from 3:30PM – 11:30 PM and Saturday and Sundays from 11:30 PM - 7:30 AM.

22. The accommodation granted was not sufficient for Plaintiff, whose doctor required her to work the morning/day shift every day, due to her disability and related prescription.

23. Though it is true that Plaintiff's medical note seeking the foregoing accommodation did not specify the specific medical reasons the accommodation was sought by Plaintiff's physician, as the NYSDHR found in it's Probable Cause Determination, in pertinent part: "…the investigation did not reveal any evidence that the respondent requested additional information from the complainant or her doctor on this issue."

24. Rather than to ask about Plaintiff's disability, or of her need for an accommodation, Defendant, by and through Ms. Stutzman, simply recommended that Plaintiff consider obtaining employment elsewhere or that she switch to a part time schedule because she

5

simply would not even consider moving Plaintiff to the Morning/day shift, full time, notwithstanding Plaintiff's doctor's note requiring same.

25. Thus, Plaintiff was willing to provide as much additional information to Defendant as Defendant deemed necessary to accommodate her disability, but rather than to engage in the interactive process, which Plaintiff duly initiated, Defendant - by and through Stutzman – did not engage in that process.

26. Shortly after Plaintiff's revived accommodation request, Defendant retaliated against Plaintiff by terminating her employment on February 7, 2017, under the pre-textual guise of performance deficiencies, when – in point of fact – Defendant fired Plaintiff because Plaintiff had engaged in lawful conduct, to wit; she requested an accommodation for her disability and related prescription.

27. The reason Defendant gave to ostensibly justify the termination - that a consumer was not satisfied with Plaintiff's performance of her duties – was false and pure pretext.

28. In addition to the termination, Catherine Stutzman's pattern of disciplining Plaintiff after the October 3, 2016 meeting, until the termination on February 7, 2017, was also retaliatory inasmuch as Plaintiff did not deserve the discipline, harassment, micromanagement and pervasive criticism she received from Stutzman.

29. BUT FOR Plaintiff's repeated requests for accommodation, Stutzman would <u>not</u> have harassed, disciplined and ultimately terminated Plaintiff's employment.

30. The effect of the practices complained of herein-above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee, because of her disability, and to otherwise have subjected her to emotional distress and physical and mental impairments for which emotional distress damages are justified.

32.     The unlawful employment practices complained of herein above were intentional, and malicious, thereby entitling Plaintiff to punitive damages.

**Disability Discrimination:**

33.     Defendant discriminated against Plaintiff, a qualified person with a disability, who was qualified for her job as a DCS who performed her duties admirably, and who was able to perform the essential functions of her job with a reasonable accommodation, (Shift Change) when, in violation of N.Y. Exec. Law, Article 15 of the Human Rights Law, and the ADA, Defendant failed to accommodate her reasonable requests for accommodation, and when it failed to engage in the required interactive process, and when it, instead, fired her.

**Retaliation:**

33.     Defendant also retaliated against Plaintiff in violation of N.Y. Exec. Law, Article 15 of the Human Rights Law, and the ADA, which Plaintiff includes as additional counts to the instant Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating or retaliating against qualified individuals on the basis of disability or against disabled employees seeking reasonable accommodation for said qualified disability, or perceived disability.

B.      Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with a disability, which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant Employer to make whole Rachel Yerian, by providing appropriate back pay and lost wages, including the value of lost benefits, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant Employer to make whole Rachel Yerian by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein-above, including but not limited to: medical expenses, attorney's fees and all other out of pocket and anticipated expenses in amounts to be determined at trial.

E. Order Defendant Employer to make whole Rachel Yerian by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including the discrimination complained of herein-above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by its complaint.

Respectfully Submitted,

S:/ James D. Hartt
**Bar #516129**
**JAMES D. HARTT, ESQ.**
**Attorney For Plaintiff**
**70 Linden Oaks, Third Floor**
**Rochester, NY 14625**
**Telephone: (585) 490-7100**
**Fax: (585) 425-0579**

ORIGINAL of the foregoing was
filed this  16th Day of February, 2018 with:
The Clerk of the Federal District Court
Western District, New York